UNITED STATES DISTRICT COURT          ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MEYER BERNAM, by his next friend,
MARINA BERNAM, individually and
on behalf of all persons similarly
situated,

                   Plaintiff,                MEMORANDUM AND ORDER

              -against-                 10-CV-2658 (JG) (SMG)

RICHARD F. DAINES, as Commissioner
of the New York State Department of
Health, ELIZABETH R. BERLIN, as
Executive Deputy Commissioner of the
New York State Office of Temporary and
Disability Assistance, and FAMILY CARE
CERTIFIED SERVICES,

                   Defendants.
---------------------------------------------------------------x
A P P E A R A N C E S:

    NEW YORK LEGAL ASSISTANCE GROUP
        450 West 33rd Street
        New York, New York 10001
    By:    Jane Greengold Stevens
        Caryn Lederer
        Jennifer Magida
        *Attorneys for Plaintiff*

    ANDREW M. CUOMO
        Attorney General, State of New York
        120 Broadway
        New York, New York 10271
        *Attorney for Defendants Richard F. Daines and Elizabeth R. Berlin*
    By:    Robert L. Kraft

    ARENT FOX, PLLC
        1675 Broadway
        New York, New York 10019
        *Attorneys for Defendant Family Care Certified Services*
    By:    David N. Wynn
        Connie Raffa

JOHN GLEESON, United States District Judge:

New York regulations generally guarantee the right to a fair hearing when a social services agency denies or reduces medical services sought by an individual. *See* N.Y. Comp. Codes R. & Regs. tit. 18, § 358-3.1(b). The regulations do not, however, provide a right to a fair hearing when the agency acts on the orders of the individual's treating physician. *See id.* §§ 358-3.1(f)(2), 505.23(f).

Plaintiff Meyer Bernam brings this suit through his daughter and next friend, Marina Bernam, individually and on behalf of a putative class of people who have been or will be denied a hearing to challenge a certified home health agency's denial of or reduction in their Medicaid-funded home health services because the agency maintains that it acted on the orders of their treating physicians. Bernam claims that the New York regulations, by disclaiming fair hearing rights when agencies act with the approval of an individual's treating physician, violate federal law and other provisions of New York law, which he asserts do not condition these rights upon a disagreement between a treating physician and an agency.

Bernam seeks as relief a class-wide injunction requiring that the defendants, Richard Daines, the Commissioner of the New York State Department of Health, Elizabeth Berlin, the Executive Deputy Commissioner of the New York State Office of Temporary and Disability Assistance, and Family Care Certified Services, his home health services provider, provide notice and a fair hearing whenever they seek to deny or reduce medical benefits, even if they do so pursuant to a treating physician's order. He also seeks a preliminary injunction requiring the defendants to ensure his continued receipt of home health services, 24 hours a day in two 12-hour shifts, seven days a week, for the pendency of this action.

This memorandum and order addresses only the application for a preliminary injunction. For the reasons discussed below, the application is denied.

BACKGROUND

To participate in Medicaid, the federally subsidized program through which the federal and state governments administer health care to the needy, a state must comply with federal law and regulations governing the program. *See Caldwell v. Blum*, 621 F.2d 491, 494 (2d Cir. 1980). Federal law requires that a participating state provide, among other services, home health care services. *See* 42 U.S.C. § 1396d(a)(7). These services range from assistance with bathing to administering medications and are prescribed by an individual's doctor, who may direct care on a spectrum from brief visits to around-the-clock monitoring.

Only certified home health agencies, or "CHHAs", may provide Medicaid-funded home health services in New York. *See* N.Y. Pub. Health § 3614(1); N.Y. Comp. Codes R. & Regs. tit. 18, § 505.23(b)(1). As their name suggests, CHHAs are licensed and regulated by the state and must comply with both state and federal law. *See Catanzano v. Dowling*, 60 F.3d 113, 115 (2d Cir. 1995). CHHAs employ nurses who independently determine the necessity and appropriateness of home health services for each patient; they are not required to provide the level of care prescribed by a patient's treating physician. But if a CHAA does not wish to provide the prescribed level of care -- because, for example, it believes the care is medically unnecessary and therefore ineligible for Medicaid reimbursement -- it may not unilaterally reduce or terminate its services. Instead, it must either (1) provide the prescribed level of care until it can transfer the case to another CHAA willing to do so, or (2) refer the case to the local social services district, notify the patient and treating physician that it has done so, and provide the prescribed level of care until instructed otherwise by the district. *See* N.Y. Comp. Codes R.

& Regs. tit. 18, § 505.23(f) (Catanzano Implementation Plan § 208). Upon referral, the district's local professional director determines whether services should be provided according to the treating physician's order. *See id.* § 505.23(f) (Catanzano Implementation Plan § 209(b)). If the director determines that they should, she so notifies the CHHA, which must abide by her decision. *See id.* § 505.23(f) (Catanzano Implementation Plan § 210(b)). If the director determines that they should not, she must notify the patient and provide an opportunity to request a fair hearing. *See id.* § 505.23(f) (Catanzano Implementation Plan § 210(a)). If the patient requests a fair hearing, the CHHA must continue to provide the prescribed level of care (aid-continuing) pending a decision, and the state must reimburse the CHHA for that care. *See id.* § 505.23(f) (Catanzano Implementation Plan § 211(a)). By contrast, if a CHHA provides services in accordance with the orders of a patient's treating physician -- including orders that direct a reduction in, or termination of, services -- the patient has no right to a fair hearing to challenge those orders. *See id.* § 358-3.1(f)(2).

The plaintiff Meyer Bernam is 84 years old. He suffers from congestive heart failure, diabetes, muscle weakness, hypertension, and dementia. Two years ago, he suffered a stroke that left him partially paralyzed. He uses a walker inside his home and a wheelchair outside. Although he lives alone, he cannot bathe or dress himself, has difficulty remembering to take his medications, and needs help to use the toilet or prepare meals. He relies on the services of a home health aide to help him with these tasks. As of November 2009, Bernam was receiving around-the-clock care by aides working in 12-hour shifts pursuant to his doctor's orders. His care was paid for by Medicaid and provided by the defendant Family Care, a certified home health agency.

On November 25, 2009, Maritza Kirkpatrick, a Family Care nurse, visited Bernam in his apartment to evaluate his need for home health services. (CHHAs are required to periodically reassess a patient's need for home health services.) In a progress note dated the same day, Kirkpatrick observed that Bernam could walk slowly with a rolling walker, use the toilet with minimum assistance, and, as he demonstrated for her, monitor his blood pressure and glucose level. She also reported that he had a commode at his bedside. She noted that she had discussed with Bernam a possible reduction in his home health services and that he had indicated that he understood and agreed. At the end of the progress note, she wrote that the "plan" was to reduce Bernam's services to 12 hours per day upon installation of a personal emergency response system,[1] and to then reevaluate, at some unspecified time, whether his services could be further reduced to 8 hours per day. At the end of the note, she wrote, "HCCM [Home Care Case Manager] to discuss with patient and MD."

In another progress note dated December 4, 2009, Kirkpatrick recommended that Bernam receive 12 hours of home health services per day, with access to a personal emergency response system, because he appeared to be able to control his bowel and bladder movements, use his commode, dress his lower body with moderate assistance, and walk using a rolling walker. She stated that Bernam's case had been discussed with branch manager Joanne Perrone and that his "MD" had agreed to the reduction in services. She also noted that Family Care had informed Bernam by telephone of the reduction, effective that day.

Although Kirkpatrick did not identify which of Bernam's doctors had agreed to the reduction, one of them, Dr. Polina Feygin, signed a "Physician Order" proposed by Family Care that clearly directed a reduction in Bernam's home health services to "7 DAYS X 12

---

[1] A personal emergency response system is a radio transmitter, usually worn around the neck or wrist, that permits the wearer to contact a 24-hour call center by pushing a button.

HOURS X 60 DAYS EFFECTIVE 12/04/2009." Feygin also signed a "plan of care" for the period from December 24, 2009 to February 21, 2010 that provided for 12 hours of care per day.[2]

Marina Bernam learned of the reduction in care when her father called her sometime in early December, panicked, to tell her that an aide had not reported for the evening shift. She tried, but failed, to negotiate with Family Care a restoration of her father's 24-hour care. Four of her father's doctors, including Feygin, opined in written statements submitted to Family Care that he required full-time care, but Family Care still refused to revisit the reduction.[3] In late December, she sought the assistance of her father's present counsel, who requested a hearing to challenge the reduction in care and asked that 24-hour care be restored pending the outcome of the hearing. The state granted the request and a hearing was held on March 17, 2010 before an administrative law judge employed by the New York State Department of Health.[4] Marina Bernam and her lawyer represented her father; Kirkpatrick was also present.

At the hearing, Family Care argued that it had acted on Feygin's authority and presented the two documents she had signed approving the reduction in care, *i.e.*, the "Physician Order" and the revised plan of care. Bernam accused Family Care of coercing Feygin's approval. In support of the allegation, he submitted a written statement by Feygin explaining that she had signed the documents despite her belief that he required 24-hour care only because a Family Care representative (whom she did not identify) told her that his care would be terminated entirely unless she approved the reduction in care. Family Care denied that one if its employees had ever made such a threat.

---

[2] Feygin did not date her signature on either document.
[3] Feygin's statement is dated December 7, 2009.
[4] According to Marina Bernam, the request for restoration of 24-hour care pending the hearing was granted in early January but full-time care did not resume until late January.

6

The administrative law judge issued his decision on June 1, 2010. He noted first that he was without jurisdiction to review the propriety of a reduction in care executed pursuant to a physician's written order. He then determined that Bernam had failed to present sufficient evidence that Family Care had coerced Feygin into signing either the "Physician Order" or the revised plan of care. Accordingly, he concluded that he lacked jurisdiction to decide whether the reduction in care was itself inappropriate, apparently on the basis of his determination that Family Care had acted pursuant to a treating physician's voluntary order.

On June 10, 2010, Marina Bernam filed this lawsuit seeking a preliminary injunction requiring Family Care to continue providing 24-hour care to her father. She argued that an injunction was necessary because the fair hearing decision permitted Family Care to reduce his services in accordance with the "Physician Order" and revised plan of care at any time without notice or a fair hearing, although it had not yet done so. The following day, the parties appeared before me, and Family Care consented to the entry of a temporary restraining order requiring it to provide Bernam 24-hour care in 12-hour shifts pending a decision on the preliminary injunction application. I held a hearing on the application on the morning of June 30, 2010. No party chose to present witnesses. That same afternoon, I convened a telephone conference and ordered the plaintiff to either file an affidavit by Feygin swearing to the level of home health services she then believed to be medically necessary for Bernam or to subpoena Feygin for an evidentiary hearing. On July 6, 2010, the plaintiff filed an affidavit by Feygin affirming that, in her "independent professional judgment," Bernam required 24-hour care.

DISCUSSION

Bernam seeks to compel the provision of 24-hour care by Family Care, a minutely regulated state actor charged with monitoring and controlling the cost of home health services

7

consistent with the state's obligation to provide medically necessary care to individuals eligible to receive Medicaid-funded services. *See Catanzano v. Dowling*, 60 F.3d 113, 119 (2d Cir. 1995) ("[T[he decisions made by the CHHA are not purely medical judgments made according to professional standards."). In circumstances such as these, "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court . . . should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989).

Bernam appears to claim that a patient is entitled to notice, a hearing, and continued aid pending the outcome of the hearing, whenever a CHHA denies or reduces home health services, regardless of whether the CHHA acts, or claims to act, with the approval of a treating physician. His claim arises from the fear that a treating physician may give mistaken orders or that a CHHA will coerce, misrepresent, or erroneously execute those orders. Bernam's claim, however, is broader than is strictly necessary to address that concern, since Bernam asserts that fair hearing rights do, and should, exist even when the treating physician does not dispute that the CHHA acted with her approval. Because it is not clear whether Bernam seeks to pursue this broader claim, or one more narrowly focused on the possibility of a mistake by a physician or action taken in error or bad faith by a CHHA, I address all three possible versions of the claim.

1. *Action Taken by the CHHA with the Undisputed Approval of the Treating Physician*

Bernam argues that 42 U.S.C. § 1396a, some of its implementing regulations, *see* 42 C.F.R. §§ 431.210, 431.220, 431.230, 431.231, New York Social Services Law § 22, and the Due Process Clauses of the New York Constitution and the Fourteenth Amendment to the

8

Federal Constitution guarantee fair hearing rights whenever a CHHA denies or reduces his Medicaid-funded home health services, even if it does so with the undisputed approval of his treating physician. Therefore, he argues, contrary New York regulations violate the Supremacy Clause and warrant injunctive relief.

Both 42 U.S.C. § 1396a and New York Social Services Law § 22 guarantee the right to a fair hearing when a claim for medical assistance is denied, but this right is qualified in an important respect: the denial must be the result of *state action*. *See* 42 U.S.C. § 1396a(a)(3) ("A State plan for medical assistance must provide for granting an opportunity for a fair hearing . . . to any individual whose claim for medical assistance *under the plan* is denied . . . ."); N.Y. Soc. Serv. § 22-1 ("Any person . . . may appeal to the department from the *decisions of social services officials* . . . ." (emphasis added)); *Catanzano v. Dowling*, 60 F.3d 113, 117 (2d Cir. 1995) ("[T]he due process fair hearing rights required by the [Medicaid] statute and regulations are triggered only when the adverse actions are implemented through state action."). The general procedural guarantees of the Due Process Clause of both the Fourteenth Amendment and the New York Constitution also apply only to state action. *See Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) ("[T]he action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948))); *Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 160 (1978).

Although a CHHA's execution of its own determination to deny or reduce services is state action, *see Catanzano*, 60 F.3d at 119, its mere implementation of the same determination by a treating physician is not. That is because the orders of treating physicians are "medical judgments made by private parties according to professional standards that are not established by the State." *See Blum*, 457 U.S. at 1005. "That the State responds to such actions

9

[by physicians] by adjusting benefits does not render it *responsible* for those actions." *Id.* (distinguishing private medical judgments from "decisions [that] were influenced in any degree by the State's obligation to adjust benefits in conformity with changes in the cost of medically necessary care").

Accordingly, Bernam is wrong to argue that either New York or federal statutory and constitutional law requires the state to afford him notice and a hearing when Family Care reduces his care pursuant to the orders of his treating physician. He has therefore not established a likelihood that he will succeed on the merits of this claim, at least as I have broadly construed it.

2. *Action Taken by the CHHA with the Mistaken Approval of the Treating Physician*

Bernam also appears to make the narrower claim that he is entitled to fair hearing rights when Family Care reduces his care with the approval of his treating physician, but that approval was the result of a mistake or misunderstanding by his doctor. I need not review the merits of this particular permutation of Bernam's claim because it appears to be moot. Whatever the reason for Feygin's initial approval of Family Care's proposal that Bernam's services be reduced to 12 hours per day -- because she in fact then agreed with Family Care, because she was careless, or because Family Care extracted her assent with an improper threat -- her opinion that he presently requires 24-hour care has since been made clear to Family Care. Therefore, if Family Care *now* wishes to reduce or terminate Bernam's care, it must do so in compliance with existing state regulations that require it to either transfer Bernam's case to another CHHA willing to provide 24-hour care or refer his case to the social services district and provide continued aid pending the outcome of a fair hearing. *See id.* § 505.23(f) (Catanzano Implementation Plan §§ 208, 211(a)).

3.  *Action Taken by the CHHA After Coercing or Misrepresenting Approval by the Treating Physician*

Finally, Bernam also appears to claim that he is entitled to fair hearing rights when Family Care assertedly reduces his care with the approval of his treating physician, but in fact coerced or misrepresented that approval.

To succeed on the merits of this claim, Bernam must prove that Family Care improperly procured Feygin's approval of the reduction in care. But, at least at this preliminary stage, Bernam has not established a likelihood that he can do so. He relies on only a brief affidavit by Feygin in which she swears that an unidentified representative of Family Care threatened to terminate Bernam's care entirely unless she lied about the level of care that she believed Bernam needed. Yet Feygin did not mention the alleged threat or her approval of the reduction in care in the form that she submitted to Family Care, only a few days later, in which she opined that Bernam required 24-hour care. Indeed, there is no evidence that Feygin reported the incident to anyone until Marina Bernam called her in February -- after seeing the "Physician Order" and the revised plan of care for the first time in preparation for the hearing -- to ask why she had approved a reduction in her father's care. And Bernam does not offer any evidence of any motive, financial or otherwise, that would cause Family Care to coerce Feygin's approval of a reduction in services rather than refer Bernam's case to the local social services district. *See* § 211(a) (requiring the state to reimburse the CHHA for continued aid pending a fair hearing decision).

Moreover, although Bernam contends otherwise, I am not convinced that he is not entitled to, and indeed has not received, a hearing on his claim that Family Care coerced Feygin's initial approval of the reduction in care. After his services were reduced in early December, he requested, and was granted, a hearing at which he claimed that Family Care had

11

unlawfully unilaterally reduced his services contrary to Feygin's actual orders.  Bernam's attorney stated in oral argument that the administrative law judge decided that he lacked jurisdiction to review a claim that a CHHA coerced a doctor's orders, but she seems to have misread the judge's decision.  Rather, it appears that the judge did consider the merits of Bernam's claim but nevertheless found his evidence that Family Care coerced Feygin wanting (as have I, at this preliminary stage.).  And having rejected Bernam's challenge to the legitimacy of Feygin's order, he concluded that he lacked jurisdiction to review the substance of that order because it reflected a medical judgment made by a private physician.

## CONCLUSION

The application for a preliminary injunction is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 2, 2010
      Brooklyn, New York